# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 16cr1448 WQH |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| WILLIE JONES JR., | |
| Defendant. | |

HAYES, Judge:

The matters before the Court are as follows: 1) Defendant's motion to suppress arrest (ECF No. 21); 2) Defendant's motion to dismiss the indictment (ECF No. 37); 3) Defendant's motion to dismiss the indictment (ECF No. 42); and Defendant's motion for a judicial order regarding potential witness (ECF No. 47).

## FACTS

On June 11, 2016, United States Border Patrol Agent Martinez was assigned to the Highway 94 checkpoint conducting inspection duties. The nearest town to the fixed location checkpoint is Jamul. There are no businesses and few residences located in immediate vicinity of the checkpoint. Agent Martinez testified that he had worked at fixed border checkpoints for eight years, including the Highway 94 checkpoint. Agent Martinez testified that recent apprehensions and smuggling events at the Highway 94 checkpoint indicated an organization out of San Bernadino was picking up illegal aliens near Tecate and dropping them off just east of the checkpoint. Agent Martinez testified that the individuals would take a trail on the north side of the checkpoint and gt picked

up west of the checkpoint to avoid detections and inspection. At approximately 1:42 p.m., motorcyclist approached the primary inspection booth and told Agent Martinez that he just observed three individuals get out of a silver Mazda pointing back to his east along Highway 94. Agent Martinez testified that the motorcyclist indicated to him that the vehicle that had dropped off the three people approaching the primary booth and pointed to a silver Mazda.

The motorcyclist testified that he was driving home from work on Highway 94, a two lane road with a gravel shoulder.[1] The motorcyclist testified that he was following behind a silver import which pulled over to the gravel shoulder just before the last corner before the checkpoint. The motorcyclist testified that three individuals got out of the car and run into the gully on the side of the road. The motorcyclist testified that this took place just east of the checkpoint in an area that was not observable from the checkpoint. The motorcyclist testified that the area had no businesses or residences in the area and that he believed this looked suspicious and strange. The motorcyclist testified that he informed the agent as he stopped at primary inspection that three people just jumped out of a little silver import right around the corner.

Agent Martinez questioned the driver of the silver Mazda sedan at primary inspection. The driver stated that he was a United States citizen, and that he was coming from Tecate. The driver displayed a drivers license from the Los Angeles area. Agent Martinez sent the driver, the Defendant in this case, to secondary inspection at approximately 1:43 p.m.

At approximately 1:50 p.m.. Border Patrol Agent Kratt and his assigned canine arrived at the checkpoint. Agent Kratt was informed of the citizen report and left the checkpoint with his canine in search of the people that had reportedly been dropped off

---

[1] Defendant moved the court for a judicial order regarding potential witness to assist in securing the presence of this witness at the evidentiary hearing. (ECF No. 47) The witness appeared without the assistance of the court.

1  prior to the checkpoint. Agent Kratt arrived at the area described by the motorcyclist
2  and encountered three individuals concealing themselves in the surrounding bushes
3  approximately thirty minutes after exiting his vehicle and beginning the search. The
4  individuals were found approximately 1/3 mile east of the checkpoint and 20 feet north
5  of S.R. 94, in the area where the motorcyclist stated the three individuals had exited the
6  silver Mazda.

7  Agent Kratt conducted a field interview on the three individuals to determine
8  their alienage and immigration status. The three individuals stated that they were born
9  in Mexico, that they were Mexican citizens, and that they did not have any immigration
10 documents to legally enter the United States. One of the individuals, later identified
11 as Jose Alberto Hernandez-Hernandez told Agent Kratt that he was picked up in Tecate,
12 CA and dropped off by a black driver near the area that he was found. Hernandez-
13 Hernandez told Agent Kratt that he was going to hike over the hill to get around the
14 checkpoint. Agent Kratt placed the three individuals under arrest for entering the being
15 in the United States illegally.

16 At approximately 2:45 p.m., Agent Kratt returned to the checkpoint and placed
17 the Defendant under arrest for alien smuggling.

18 On June 23, 2016, an indictment was filed charging the Defendant Willie Jones,
19 Jr. with three counts of transportation of an alien with the intent to violate the
20 immigration laws in violation of 8 U.S.C. § 1324 (a)(1)(A)(ii). (ECF No. 13).

21 On Defendant moved to suppress his seizure and arrest on the grounds that the
22 agents lacked reasonable suspicion to detain him. (ECF No. 21).

23 On November 7, 2016, Defendant moved to dismiss the indictment on the
24 grounds that the agents lacked reasonable suspicion to detain him. (ECF No. 37).

25 On December 5, 2016, Defendant moved to dismiss the indictment on the
26 grounds that the agents lacked probable cause to arrest him. (ECF No. 37).

27 On December 15, 2016, the Government filed a response in opposition to the
28

1 motions to suppress his seizure and arrest and the motions to dismiss the indictment.
2 (ECF No. 43).

3 On January 18, 2017 and February 2, 2017, the Court held an evidentiary hearing.

## CONTENTIONS OF THE PARTIES

Defendant contends that Agent Martinez lacked reasonable suspicion to detain him at secondary. Defendant asserts that he approached the checkpoint and handed his identification as instructed. Defendant asserts the there is nothing illegal about persons getting out of a car near a checkpoint, regardless of its proximity to the border. Defendant further contends that the agent did not have probable cause to support the warrantless arrest. Defendant asserts that Agent Martinez was not entitled to rely upon the statement of the motorcyclist who unjustly accused him. Defendant asserts that Agent Martinez fabricated his testimony that Jones told him he was coming from Tecate, CA to bolster probable cause. Defendant asserts that the agent was required to obtain his contact information and send him on his way.

The Government contends that Defendant was properly sent to secondary and detained further based upon reasonable suspicion. The Government asserts that the citizen's report along with the experience and knowledge of the agent provided ample reasonable suspicion to detain the Defendant in secondary in order to investigate the report. The Government further contends that the discovery of the three individuals who admitted to being citizens of Mexico with no legal documents at the location reported by the citizen ripened the suspicions into probable cause.

## RULING OF THE COURT

a. Reasonable suspicion for referral and detention in secondary area

"A vehicles may be stopped at permanent immigration checkpoints for brief initial questioning and referred to a secondary inspections area for further questioning 'in the absence of any individualized suspicion.'" *United States v. Wilson*, 7 F.3d 828,

1  833 (9th Cir. 1993) quoting *United States v. Martinez-Fuerte,* 428 U.S. 543, 562 (1976).
2  Once stopped, agents are allowed to briefly detain an individual "beyond the time
3  required for immigration purposes  . . . if predicated on an articulable suspicion or a
4  minimal showing of suspicion of criminal activity." *Wilson*, 7 F.3d at 834. *See also*
5  *United States v. Preciado-Robles*, 964 F.2d 882, 884 (9th Cir. 1992) ("'[B]rief
6  detention following valid immigration questioning is permitted so long as the
7  government can prove an articulable suspicion or a minimal showing of suspicion.").

8  "While 'reasonable suspicion' is a less demanding standard than probable cause
9  and requires considerably less than preponderance of the evidence, the Fourth
10 Amendment requires at least a minimal level of objective justification for making the
11 stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  Reasonable suspicion requires
12 the agents making the stop be "aware of specific, articulable facts which, when
13 considered with objective and reasonable inferences, form the basis for particularized
14 suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000)
15 (en banc).  "Whether reasonable suspicion exists depends upon the totality of the
16 circumstances surrounding the stop, including 'both the content of information
17 possessed by police and its degree of reliability.'" *United States v. Williams*, 846 F.3d
18 303, 308 (9th Cir. 2106) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

19  In this case, the citizen report and the knowledge and experience of the agent at
20 primary provided the reasonable suspicion of criminal activity necessary to send
21 Defendant to secondary and to detain the Defendant for the period of approximately one
22 hour required to investigate.  The motorcyclist identified the vehicle Defendant was
23 driving and reported that three individuals had exited the vehicle just before the
24 checkpoint in a remote, unpopulated area. This area was known to the agent as an area
25 used to avoid inspection at the checkpoint. The agent possessed specific, articulable,
26 and reliable facts which formed the basis for particularized suspicion that the Defendant
27 was involved in alien smuggling.  The Court concludes that Defendant's detention in
28

secondary for approximately one hour in order to investigate did not violate his Fourth Amendment rights.

b. Probable cause for warrantless arrest

In *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007), the Court of Appeals explained,

> Under the Fourth Amendment, a warrantless arrest requires probable cause. *See Michigan v. Summers*, 452 U.S. 692, 700, 101 S.Ct. 2587, 69 LED.2d 340 (1981). Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 LED.2d 142 (1964). Alternatively, this court has defined probable cause as follows: when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986). While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984) (citing *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 4 LED.2d 134 (1959)).

The court must look to "the totality of the circumstances" in order to determine whether the government has met the probable cause standard. *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013).

In this case, the citizen report and the agent's knowledge and experience lead the agent to detain the Defendant and to initiate an investigation into the reasonable suspicion that the Defendant was engaged in alien smuggling. Within an hour, Agent Kratt had located three individuals concealing themselves in the brush at the location identified by the citizen motorcyclist. Agent Kratt confirmed that these individuals were born in Mexico, that they were Mexican citizens, and that they did not have any immigration documents to legally enter the United States. One of the individuals told Agent Kratt that he was going to hike over the hill to get around the checkpoint. The agent had reasonably trustworthy information linking the Defendant to the individuals found in the brush to establish probable cause to believe that a crime. This information was sufficient to lead a person of reasonable caution to believe that the offense of alien

1  smuggling had been committed by the Defendant. *See United States v. Smith*, 790 F.2d
2  789, 792 (9th Cir.1986) ("Under the totality of circumstances known to the arresting
3  officers, a prudent person would have concluded that there was a fair probability that
4  [the defendant] had committed a crime."). The Court concludes that the warrantless
5  arrest of the Defendant did not violate his Fourth Amendment rights.

6  IT IS HEREBY ORDERED that 1) Defendant's motion to suppress arrest (ECF
7  No. 21) is denied; 2) Defendant's motion to dismiss the indictment (ECF No. 37) is
8  denied; 3) Defendant's motion to dismiss the indictment (ECF No. 42) is denied; and
9  4) Defendant's motion for a judicial order regarding potential witness (ECF No. 47) is
10 moot and denied.

11 DATED: March 28, 2017

**WILLIAM Q. HAYES**
United States District Judge